IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 28, 2022

**TRENDELL BRADY V. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Knox County**
**No. 112515   Steven Wayne Sword, Judge**

_____

**No. E2021-00917-CCA-R3-PC**

_____

The Petitioner, Trendell Brady, appeals the Knox County Criminal Court's denial of his post-conviction petition, seeking relief from his convictions for two counts of rape of a child and resulting effective fifty-year sentence.  On appeal, the Petitioner contends that he received the ineffective assistance of counsel because trial counsel should have expressly advised him not to testify at trial.  After review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN W. CAMPBELL, SR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and JILL BARTEE AYERS, JJ., joined.

J. Liddell Kirk, Madisonville, Tennessee, for the appellant, Trendell Brady.

Herbert H. Slatery III, Attorney General and Reporter; Courtney N. Orr, Senior Assistant Attorney General; Charme P. Allen, District Attorney General; and Nathaniel Ogle, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

In September 2015, the Knox County Grand Jury indicted the Petitioner for four counts of rape of a child.  The alleged victim was his girlfriend's daughter.  Counts one and two alleged digital penetration of the victim's vagina, and counts three and four alleged penile penetration of her vagina.

The victim, who was born in 1998 and was nineteen years old at the time of the Petitioner's trial, testified that the Petitioner used to supervise her and her siblings while her mother was at work.  *State v. Trendell Brady*, No. E2019-00947-CCA-R3-CD, 2020

WL 1847480, at *1 (Tenn. Crim. App. Apr. 13, 2020) no perm. app. filed. The Petitioner began "touching" the victim, and the touching progressed to digital penetration and then penile penetration. *See id.* The Petitioner had an identical twin brother who stayed with the victim's family sometimes. *See id.* at *2. The victim said that the Petitioner and his brother looked and talked "'exactly'" alike and that she would get them confused. *Id.* The victim said, though, that the Petitioner was the only person who could have touched her and penetrated her because he was the only person in the house who supervised her and her siblings while her mother was at work. *Id.*

The victim did not tell her mother that the Petitioner was sexually abusing her. *Id.* In November 2009, when the victim was eleven years old, she learned she was pregnant. *Id.* at *3. The victim's mother testified that the victim told her the baby's father was "'Javante or something like that.'" *Id.* When the victim's mother told the Petitioner about the pregnancy, he did not say anything. *Id.* However, the victim's mother later found him unconscious on the couch and found a note nearby that read, "'I'm sorry for what I done to you.'" *Id.* The Petitioner had taken pills but received medical treatment and recovered. *Id.* The victim had an abortion, and the police obtained "'a sample of the baby.'" *Id.* The police investigated the victim's pregnancy but could not find "'Javante.'" *Id.* at *5.

In March 2011, when the victim was thirteen years old, her mother took her to the hospital because her stomach hurt, and they learned the victim was thirty-seven weeks pregnant. *Id.* at *3. The victim delivered a son and told her mother that the baby's father was "someone named 'Jordan.'" *Id.* at *2. In August 2015, the victim told her mother that the Petitioner was her son's father, and the victim's mother spoke with the police. *Id.* at *3. An investigator with the Knoxville Police Department interviewed the Petitioner, and the Petitioner said that he began having "consensual sex" with the victim when she was eleven years old but that "it never was rape." *Id.* at *4. The investigator collected a buccal swab from the Petitioner, and DNA analysis showed that the Petitioner fathered the victim's aborted fetus and her son. *See id.* at *6. An expert in forensic DNA analysis testified that identical twins had the same DNA profile. *Id.*

The State played for the jury two jailhouse telephone conversations between the Petitioner and his sister. In the first conversation, the Petitioner agreed with his sister that he had sex with the victim when the victim was "'young.'" *Id.* at *5. In the second conversation, the Petitioner said "there was 'no possible way'" his brother had sex with the victim. *Id.*

The Petitioner testified at trial that he "'never touched'" the victim and that he "took care of the victim's mother's children 'like [they were] his own.'" *Id.* at *7. He said that the victim had a "'crush'" on his twin brother, that the victim and his brother "'used to play around a lot,'" and that he "began to suspect something was going on between them." *Id.*

- 2 -

The Petitioner claimed that he attempted suicide in 2009 because the victim's mother was "'cheating on [him]'" and that he confessed to having sex with the victim because he did not want his brother to get into trouble. *Id.*

The jury found the Petitioner not guilty of rape of a child in counts one and two but guilty of rape of a child in counts three and four. *Id.* at *8. The trial court sentenced him to twenty-five years for each conviction and ordered that he serve the sentences consecutively. *Id.* at *1. On direct appeal of his convictions, the Petitioner claimed that the evidence was insufficient to support the convictions and that the trial court improperly ordered consecutive sentencing. *Id.* This court affirmed the Petitioner's convictions and effective fifty-year sentence. *Id.*

The Petitioner filed a pro se petition for post-conviction relief, claiming that he received the ineffective assistance of trial counsel. The post-conviction court appointed counsel, and counsel filed an amended petition in which the Petitioner asserted that trial counsel was ineffective by failing to advise him not to testify at trial.

At the evidentiary hearing, the Petitioner testified that trial counsel met with him and that they discussed the charges in the indictment. Trial counsel "tried" to explain the charges to the Petitioner, but the Petitioner did not "really" understand them. The Petitioner and trial counsel discussed the State's DNA evidence and how to address that evidence at trial. They also discussed his statements to the investigator. The Petitioner and trial counsel talked about the defense's strategy regarding the statements, but the Petitioner did not "remember so much" about their conversation.

The Petitioner testified that he and trial counsel talked about his right to testify. Trial counsel told the Petitioner that it was the Petitioner's decision whether to testify, and the Petitioner told trial counsel that he was going to testify because he was innocent. However, the Petitioner "didn't really understand what was going on." Post-conviction counsel asked if trial counsel advised the Petitioner to testify, and the Petitioner said that he was not sure and that he did not remember. The Petitioner said he remembered telling trial counsel that he wanted to testify. Post-conviction counsel asked if trial counsel warned the Petitioner that the jury might not believe his testimony, and the Petitioner responded, "I think he did."

The Petitioner testified that he and trial counsel "probably" went over his potential trial testimony but that he "probably didn't understand it." The Petitioner's girlfriend told him to testify, and he followed her advice. Post-conviction counsel asked if the Petitioner listened to trial counsel's advice, and the Petitioner answered, "No." The Petitioner said that he did not remember trial counsel's telling him or warning him not to testify and that

- 3 -

he decided to testify because he was innocent. The Petitioner said he did not understand that he could have chosen not to testify.

On cross-examination, the Petitioner confirmed that he wanted to testify to prove he was innocent, and he acknowledged that he and trial counsel discussed "the risks and rewards" of his testimony before trial. The Petitioner chose to testify, and trial counsel did not pressure him to do so.

Trial counsel testified for the Petitioner that he was appointed to represent the Petitioner and received discovery. The Petitioner "maintained his innocence" and told trial counsel that he did not commit the crimes. However, the State had DNA evidence showing that the Petitioner fathered the victim's children. Moreover, the Petitioner had confessed to an investigator and had said in telephone conversations that he committed the crimes. Trial counsel and the Petitioner discussed trial strategy. The defense's strategy was to explain the DNA evidence by blaming the Defendant's identical twin brother for the crimes and to argue that the Defendant gave a false confession to the investigator. The Petitioner was "maybe a little bit slow and subject to both manipulation and confusion," so trial counsel explained the telephone conversations by arguing to the jury that the Defendant was saying what other people wanted him to say.

Trial counsel testified that he told the Petitioner that it was the Petitioner's decision whether to testify. Trial counsel and the Petitioner "talked extensively about what his testimony would look like," and trial counsel told the Petitioner that he would be subject to cross-examination. Trial counsel warned the Petitioner that the prosecutor's questions could be confusing and that the Petitioner could say something "dangerous" to his case. Trial counsel told the Petitioner "how to keep things simple" and "how to testify effectively" and advised him that the prosecutor was going to try "to set him up in a way that he looks bad in front of the jury or he might get confused or get mistaken about a response."

Trial counsel testified that given the evidence in this case, he thought there was a "legitimate strategy" in having the Petitioner testify about a false confession. Trial counsel explained to the Petitioner that the jurors were "the ultimate arbiters" of witness credibility and that the jury would determine whether he was credible. The Petitioner wanted to testify, and trial counsel thought there was a benefit to the Petitioner's testifying in this case. About halfway through the prosecutor's cross-examination, though, the Petitioner's testimony "didn't come across very well to the jury." Nevertheless, the jury still had enough doubt to acquit the Petitioner of two counts of the indictment.

On cross-examination, trial counsel testified that he and the Petitioner had "extensive conversations" about blaming the Petitioner's brother for sexually abusing the

victim. As to the Petitioner's admissions to the investigator and the Petitioner's sister, trial counsel acknowledged that having the Petitioner testify gave the jury an opportunity to see that the Petitioner was "subject to suggestibility" due to "some sort of intellectual issue." Trial counsel and the Petitioner practiced his testimony, but the Petitioner did not testify as well at trial as he had testified in practice.

On redirect examination, trial counsel acknowledged that witnesses other than the Petitioner were available to testify that the Petitioner had an identical twin. Trial counsel said, though, that the Petitioner needed to testify in order to claim he gave a false confession. Trial counsel told the Petitioner before trial that the victim's consent did not matter, and the Petitioner understood that the victim's consent was irrelevant to his defense. At trial, the Petitioner testified that he confessed to the crimes because he was confused and did not understand what the investigator was asking him.

On July 13, 2021, the post-conviction court entered an order denying the petition. In the order, the post-conviction court concluded that the Petitioner failed to show that trial counsel was deficient in his advice about the Petitioner's testifying at trial. The post-conviction court found that trial counsel's advice was based on reasonable grounds after trial counsel had investigated the case and that trial counsel's advice was reasonable trial strategy. The post-conviction court also found that, in any event, the Petitioner "made the decision to testify based upon his own reasoning and advice from his girlfriend." Regarding prejudice, the post-conviction court concluded that the Petitioner failed to demonstrate that he was prejudiced by his trial testimony because the jury would have learned about the DNA evidence and his incriminating statements even if he had not testified. The post-conviction court described the DNA proof and the confession as "overwhelming" evidence. Accordingly, the court denied the petition for post-conviction relief.

## ANALYSIS

On appeal, the Petitioner contends that he received the ineffective assistance of counsel because trial counsel should have expressly advised him not to testify and because it was unreasonable for trial counsel to think his testimony would benefit the defense. The Petitioner asserts that trial counsel could have supported the defense's theory of the case through witnesses other than the Petitioner and that trial counsel still could have argued that the Petitioner was subject to manipulation, confusion, and giving a false confession without having him testify. The State argues that the post-conviction court properly denied the petition. We agree with the State.

Post-conviction relief "shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of

Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. The petitioner bears the burden of proving factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. *See Wiley v. State*, 183 S.W.3d 317, 325 (Tenn. 2006). When reviewing factual issues, the appellate court will not reweigh the evidence and will instead defer to the post-conviction court's findings as to the credibility of witnesses or the weight of their testimony. *Id.* However, review of a post-conviction court's application of the law to the facts of the case is de novo, with no presumption of correctness. *See Ruff v. State*, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed de novo, with a presumption of correctness given only to the post-conviction court's findings of fact. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001); *Burns v. State*, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The *Strickland* standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 688; *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). The reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, *see Strickland*, 466 U.S. at 690, and may not second-guess the tactical and strategic choices made by trial counsel unless those

choices were uninformed because of inadequate preparation.  *See Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982).

The prejudice prong of the test is satisfied by showing a reasonable probability, i.e., a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  Courts need not approach the *Strickland* test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one."  466 U.S. at 697; *see also Goad*, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

Here, trial counsel considered the evidence against the Petitioner and reasoned that the Petitioner's testimony could benefit the defense by allowing the Petitioner to tell the jury that he gave a false confession and by allowing the jury to see that the Petitioner had an intellectual issue that could have caused him to be manipulated or confused by the investigator.  This court will not second-guess tactical or strategic choices of counsel unless those choices are based upon inadequate preparation.  *See State v. Hellard*, 629 S.W.2d 4, 9 (Tenn. 1982).  Regardless, as noted by the post-conviction court, the Petitioner said that he wanted to testify at trial to prove his innocence and that he took his girlfriend's advice to testify.  We note that the Petitioner expressly stated that he did not take trial counsel's advice.  Finally, we agree with the post-conviction court that the evidence against the Petitioner was overwhelming.  Therefore, the Petitioner has failed to demonstrate that trial counsel rendered deficient performance or that he was prejudiced by any deficiency and affirm the post-conviction court's denial of the petition for post-conviction relief.

## CONCLUSION

Based on our review, we affirm the judgment of the post-conviction court.


_____
JOHN W. CAMPBELL, SR., JUDGE